David R. Sugden, Bar No. 218465
dsugden@calljensen.com
Scott P. Shaw, Bar No. 223592
sshaw@calljensen.com
Samuel G. Brooks, Bar No. 272107
sbrooks@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000
Fax:   (949) 717-3100

Attorneys for Defendant Family Dollar Stores, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISORDERLY KIDS, LLC, a California limited liability company,<br><br>          Plaintiff,<br><br>          vs.<br><br>FAMILY DOLLAR STORES, INC., a Delaware corporation (erroneously sued as FAMILY DOLLAR, a North Carolina company), and DOES 1-10, inclusive,<br><br>          Defendants. | Case No.  CV12-05073 FMO (JCGx)<br><br>**DEFENDANT FAMILY DOLLAR STORES, INC.'S MEMORANDUM SHOWING CAUSE REGARDING SANCTIONS**<br><br>Date:  August 22, 2013<br>Time:  10:00 a.m.<br>Courtroom: 22<br><br>Complaint Filed:   June 11, 2012<br>Trial Date:          August 27, 2013 |

CALL &
JENSEN

IKE01-04:1193972_1:8-20-13

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   FACTUAL BACKGROUND.......................................................................1

III.  LEGAL STANDARD ...............................................................................11

IV.   DISCUSSION............................................................................................11

    A.    Sanctions Against Family Dollar Are Not Warranted ...................11

    B.    An Appropriate Sanction Should Be Imposed Against
          Disorderly Kids And Its Attorney, Lyle Mink ...............................13

V.    CONCLUSION..........................................................................................16

# **TABLE OF AUTHORITIES**

Federal Cases

Case No. CV12-05073 FMO (JCGx).........................................................................1

Federal Rules

Id. R. 16(f)(2) ......................................................................................................11

Rule 16 of the Federal Rules of Civil Procedure. Rule ...........................................11, 15

Rule 16(f) ...........................................................................................................15

DEFENDANT FAMILY DOLLAR STORES, INC.'S MEMORANDUM SHOWING CAUSE REGARDING SANCTIONS

## I.      INTRODUCTION

The Court is obviously frustrated, but Defendant's counsel is perhaps more frustrated.  After substituting into this case, Plaintiff's counsel has failed to confer with Defendant's counsel in good faith, has included false statements in court filings, has stated on many occasions that he is too busy for this case, has made improper personal attacks against Defendant's counsel, has requested two extensions of time from the Court, and has offered untimely disclosures of new witnesses.

What is Defendant's counsel supposed to do when Plaintiff's counsel refuses to confer substantively and in good faith over the issues, and then fails to complete Plaintiff's portion of a joint brief (which is still not complete as of this date)?

Plaintiff counsel's conduct cannot stand.  Defendant's counsel has to ask, "What more can we do?" Defendant's counsel cannot force Plaintiff's counsel to pay attention to this case or to comply with the Court's orders. Whether or not Plaintiff's attorney is willing or able to address the issues, Defendant is entitled to request that the Court grant summary judgment. Defendant Family Dollar stands ready to put an end to petty squabbling and move ahead with summary judgment. Therefore, Family Dollar requests that the Court enter an appropriate sanction against Plaintiff and its counsel, Lyle Mink, and enter an order holding Plaintiff strictly accountable to very specific deadlines. A proposed order is filed with this memorandum.

## II.     FACTUAL BACKGROUND

Family Dollar's efforts to bring this motion for summary judgment reach back several months.

On March 7, 2013, Family Dollar's counsel, Samuel Brooks had a phone conference with Plaintiff's former counsel, Oren Bitan. [Declaration of Samuel G. Brooks In Support of Memorandum Showing Cause Regarding Sanctions ("Brooks Dec") ¶ 2]. They discussed a number of issues for which Family Dollar intended to seek summary judgment. [Brooks Dec. ¶ 2]. As a result of this call, Plaintiff agreed to drop

claims for violation of the Lanham Act, as well as the California Unfair Competition claim to the extent it was based on a trademark infringement or passing off theory. [Brooks Dec. ¶ 2].

On March 13, 2013, Mr. Brooks confirmed this conversation by email and also proposed that Plaintiff drop its claim for "Butterfly With Stripes Screen" since the evidence clearly established that the accused design was created prior to the copyrighted work. [Brooks Dec. ¶ 3, Exh. 1]. The email further proposed that Plaintiff drop its claim for California Unfair Competition entirely since without a trade dress or trademark theory the claim would be preempted. [Brooks Dec. ¶ 3, Exh. 1].

On March 15, 2013 Family Dollar took the deposition of Plaintiff's person(s) most knowledgeable. [Brooks Dec. ¶ 4]. Plaintiff designated Jason Schutzer to testify on the topics in the deposition notice. [Brooks Dec. ¶ 4].

On April 23 Plaintiff took the deposition of Nicole Coppinger, and on April 26 Plaintiff took the deposition of Sarah Tate. [Brooks Dec. ¶ 5].

With a previous meeting on the issues relating to summary judgment in March, and with fact discovery essentially complete, Family Dollar contacted Plaintiff's counsel on May 3, 2013, and informed them that Family Dollar intended to file a motion for summary judgment. [Brooks Dec. ¶ 6, Exh. 2]. Over the next several days, Plaintiff's counsel contended that the parties had not adequately met and conferred. [Brooks Dec. ¶¶ 7-19, Exhs. 3-15]. Defendants' counsel explained why they believed the meet and confer process had been completed, but nevertheless offered on several occasions to make themselves available to discuss the issues further. [Brooks Dec. ¶¶ 7-19, Exhs. 3-15].

Rather than meeting and conferring with Defendant's counsel, Plaintiff filed an ex parte application for a continuance of the scheduling order on May 9, 2013. [Brooks Dec. ¶ 19] [Ex Parte App., Dct. 35]. The court agreed to vacate trial-related dates, but denied the application with respect to discovery and summary judgment. [Minute Order,

DEFENDANT FAMILY DOLLAR STORES, INC.'S MEMORANDUM SHOWING CAUSE REGARDING
SANCTIONS

Dct. 37]. The implication of the Court's decision was clear—the parties should finalize and file any motions for summary judgment.

In the meantime, Plaintiff also requested leave to substitute a new attorney, Lyle Mink, for its former attorneys. [Request for Approval of Substitution, Dct. 38]. On May 14, Samuel Brooks and Lyle Mink had a telephone call regarding the motion for summary judgment, and Mr. Brooks sent Mink an email that afternoon (4:05 PM) to confirm the conversation, to explain Family Dollar's position on the issues, and to bring him up to speed on the parties' prior discussions. [Brooks Dec. ¶ 20, Exh. 16]. In the telephone call, Mink took the position that he could not meet and confer because he had not yet received the file. [Brooks Dec. ¶ 20]. And in response to Mr. Brooks' email (sent at 5:13 PM), Mink said, "I have neither the time nor the inclination to traverse lengthy, self-serving e-mails to identify which statements may be true and which may not." [Brooks Dec. ¶ 21, Exh. 17].

Although Mink was not able to discuss the issues on May 14, Mr. Brooks sent an email on May 15, again summarizing Family Dollar's positions with respect to summary judgment. [Brooks Dec. ¶ 22, Exh. 18]. Mink sent an email on May 17 saying he had the file, and that he would respond to the issues the following Monday. [Brooks Dec. ¶ 23, Exh. 19]. Mink did not respond to the issues the following Monday, May 20, but Brooks sent him an email at 4:56 PM offering to schedule a phone call to discuss the issues. [Brooks Dec. ¶ 24, Exh. 20]. Mink responded tersely, "Some emergencies came up that got in the way. I'm still working on them. I plan on being in early tomorrow to respond in the morning, in writing." [Brooks Dec. ¶ 25, Exh. 21].

The next day, May 21, Mink sent a short email to Brooks at 9:03 AM. [Brooks Dec. ¶ 26, Exh. 22]. The email agreed to stipulate that Plaintiff was not entitled to statutory damages or attorney fees, but refused to stipulate to the uncontroverted fact that the accused butterfly design was created prior to the "Butterfly With Stripes Screen." [Brooks Dec. ¶ 26, Exh. 22]. He also refused to dismiss the other claims or provide his response to the remaining issues. [Brooks Dec. ¶ 26, Exh. 22]. Mink said, "I

DEFENDANT FAMILY DOLLAR STORES, INC.'S MEMORANDUM SHOWING CAUSE REGARDING SANCTIONS

see no need to respond to the remainder of your email," even though Brooks' email had set out the basic legal and factual positions that supported summary judgment. [Brooks Dec. ¶ 26, Exh. 22].

Having attempted on several occasions to obtain Plaintiff's positions on the facts and issues, Family Dollar finally filed its motion for summary judgment on May 23. [Brooks Dec. ¶ 27] [Mot. for Summary Judgment, Dct. 50]. Plaintiff filed an opposition to the motion on June 27. [Opp., Dct. 53-67]. In its opposition, Plaintiff made a frivolous argument that it could pursue a claim for copyright infringement of "Butterfly With Stripes Screen" by attempting to show that a <u>different butterfly design</u>[1] had been created prior to the accused butterfly design. [Amended Opp., Dct 67, at 8:15-10:5]. Plaintiff also falsely asserted that certain emails showed that Nicole Coppinger (the author of the accused designs) had been given access to Disorderly Kids designs by Sarah Tate.[2] [Amended Opp., Dct 67 at 5:20-21]. In reply, Family Dollar pointed out the misleading arguments and also filed objections to Plaintiff's evidence on a number of grounds—including the grounds that witnesses and documents had not been disclosed as required by the Federal Rules of Civil Procedure. [Brooks Dec. ¶ 29] [Reply, Dct. 68, at 1:12-3:26, 4 n.1].

Plaintiff's argument was vague and confusing, at best, but the Court apparently interpreted Plaintiff's position as arguing that the "Butterfly With Stripes Screen" was actually created prior to the date that was set forth in the copyright registration certificate, and that Sarah Tate had provided the design to Nicole Coppinger for copying. [Order, Dct. 70, at 1:21-2:4]. As a result, on July 15, the Court issued an order denying the motion for summary judgment without prejudice and ordering the parties to meet and confer in person to try to get "on the same page." [Order, Dct. 70]. The

---

[1] Claims for infringement of this different design were previously asserted in this very case. The design was registered under the title "Side Butterflies Screen."

[2] What the emails actually showed was that Nicole Coppinger and Sarah Tate exchanged emails relating to *Nicole's* designs. There is absolutely no evidence showing that Nicole Coppinger ever received any images of Disorderly Kids designs from Sarah Tate. And in fact, both Sarah and Nicole testified that she did not.

Court's order required the parties to meet on the record on July 18, and re-file a motion on August 8. [Order, Dct 70, at 2:16-3:8].

On July 16, 2013, at 11:03 AM, Brooks sent Mink an email offering to host the meet and confer at Defendant's counsel's offices or to meet at the courthouse or a court reporter's office. [Brooks Dec. ¶ 31, Exh. 23]. Brooks also once again provided Defendant's substantive positions on all of the issues that would need to be addressed at the face-to-face meeting, and requested Mink's positions on those issues in order to streamline the meet and confer process. [Brooks Dec. ¶ 31, Exh. 23]. Mink responded at 12:21 PM that "[t]his appears to be a short version of your motion, and you apparently want a short version of mine." [Brooks Dec. ¶ 32, Exh. 24]. He said that he "ha[d] very little time for anything else [other than preparing for a trial in another case]," and he refused to spend any time on this matter other than attending the required meeting on July 18. [Brooks Dec. ¶ 32, Exh. 24]. He also requested that Family Dollar stipulate to continue the August filing deadline. [Brooks Dec. ¶ 32, Exh. 24].

Approximately an hour later, at 1:28 PM, Scott Shaw responded to Mink's email, pointed out that Mink was unwilling to fully confer prior to the original motion because he was too busy, and made misstatements of fact in his opposition papers. [Brooks Dec. ¶ 33, Exh. 25]. The email again requested that Mink cooperate with Family Dollar in good faith to resolve the issues. [Brooks Dec. ¶ 33, Exh. 25]. At 1:34 PM, Scott Shaw sent a follow-up email offering to stipulate to continue the filing deadline if Mink would simply respond to Family Dollar on the issues prior to the face-to-face meeting. [Brooks Dec. ¶ 34, Exh. 26]. At 1:44 PM, Brooks sent another follow-up email, and offered to make the arrangements for a conference room and a court reporter. [Brooks Dec. ¶ 35, Exh. 27]. In an email at 1:56 PM, Mink responded to Shaw's email and utterly refused to respond with his positions on the merits prior to the meeting. [Brooks Dec. ¶ 36, Exh. 28]. In an email at 2:02 PM, Mink responded to Brooks's email, again saying "I don't have time for this." [Brooks Dec. ¶ 37, Exh. 29]. Again, in an email at 2:04 PM, Mink sent an email saying he did not have time. [Brooks Dec. ¶ 38, Exh. 30]. At 2:05 PM,

CALL&
JENSEN

Shaw again sent an email to Mink requesting that he respond to the issues, and asking Mink how he could in good faith rely on the material misstatements of fact in his opposition brief. [Brooks Dec. ¶ 39, Exh. 31]. Mink's response (sent at 2:12 PM) was terse and aggressive, calling Shaw and Brooks' efforts to meet and confer "ridiculous" and "childish." [Brooks Dec. ¶ 40, Exh. 32].

In an effort to accommodate Mink, Brooks arranged for the conference to be held at an office building on July 18 as close as possible to Mink's office. [Brooks Dec. ¶ 41]. In preparation for the meet and confer, Brooks prepared a checklist of issues to discuss, and also assembled the evidence that had been previously filed in a document that could later be used as the court-ordered evidentiary appendix. [Brooks Dec. ¶ 42]. Because the number of pages was significant, Brooks prepared only one copy, which he intended to submit on the record. [Brooks Dec. ¶ 42, Exh. 33].

At the July 18 meeting, Mink was impatient to get back to his trial preparation. He mentioned several times that he had 14 motions in limine to deal with. [Brooks Dec. ¶ 43, Exh. 34, Transcript at 39:7-13; 92:5-7; 101:6-10; 105:25-106:9]. At one point, he even admitted that he was not focused on this matter, saying "I've got 14 motions in limine in my head right now. I'm doing two things at once." [Brooks Dec. ¶ 43, Exh. 34, Transcript at 92:5-7]. He bristled at Brooks' request to go through a 19-page checklist and discuss each of the issues. [Brooks Dec. ¶ 43, Exh. 34, Transcript at 39:7-16]. And there was a significant amount of legal arguments and evidence that Mink was simply not prepared to discuss. [Brooks Dec. ¶ 43, Exh. 34, see, e.g., Transcript at 22:21-23:10; 24:10-15; 25:19-24; 40:23-42:3; 44:1-8; 90:19-91:3; 92:14-93:8; 96:6-100:19]. Indeed, Mink had not even read the Reply brief which responded to the arguments he had made in opposition. [Brooks Dec. ¶ 43, Exh. 34, Transcript at 92:14-93:5].

After the face-to-face meeting, Mink filed an ex parte application to continue the deadline to re-file the motion for summary judgment. [Ex Parte App., Dcts. 73-74]. The Court denied the application on July 24. [Order, Dct. 76]. Family Dollar's counsel

DEFENDANT FAMILY DOLLAR STORES, INC.'S MEMORANDUM SHOWING CAUSE REGARDING SANCTIONS

began revising the motion for summary judgment to comply with the court's order requiring a joint format. [Brooks Dec. ¶ 45]. In addition, on July 24, Family Dollar served (but did not file) a motion for sanctions pursuant to Rule 11, arguing that Plaintiff's counsel should be sanctioned for refusing to withdraw frivolous legal arguments and factual assertions that have no evidentiary support. [Brooks Dec. ¶ 45].

On August 5, at 1:51 PM, Brooks emailed Mink to touch base on the motion for summary judgment. [Brooks Dec. ¶ 46, Exh. 35]. In the email, Brooks again listed the issues that would be addressed in the joint brief, and proposed that the parties exchange papers on Wednesday, August 7, so that each party's arguments and evidence could be integrated into the joint format required by the court. [Brooks Dec. ¶ 46, Exh. 35]. At 3:04 PM, Mink responded, again complaining that he did not have time to complete his papers and accusing Brooks of lying. [Brooks Dec. ¶ 47, Exh. 36]. Brooks replied to Mink's message at 3:46 PM, firmly demanded that Mink stop making ad hominem attacks, and again requested his cooperation in preparing the motion. [Brooks Dec. ¶ 48, Exh. 37]. Mink responded at 4:34, again accusing Brooks of spinning the facts and refusing to begin work on his arguments until after receiving Family Dollar's finalized motion. [Brooks Dec. ¶ 49, Exh. 38].

On August 6, at 6:10 PM, Brooks emailed Mink Family Dollar's portion of the joint brief and joint appendix of undisputed and disputed facts. [Brooks Dec. ¶ 50, Exh. 39]. Because the evidentiary appendix was too large to send by email, Brooks stated that a disk with all of the documents would be delivered to Mink's office as soon as possible the next day. [Brooks Dec. ¶ 50, Exh. 39].

On August 7, at 9:20 AM, Mink sent an email to Brooks saying that he doubted that he would complete his portion of the joint papers on time. [Brooks Dec. ¶ 51, Exh. 40]. In emails at 9:56 AM, 10:04 AM, and 10:06 AM, Mink continued to complain that the brief and joint statement of undisputed and disputed facts had been revised, and that he would not be completing his portion of the papers on time. [Brooks Dec. ¶ 52, Exh. 41]. At 1:32 PM, Brooks responded to these emails, explaining that Mink had never

DEFENDANT FAMILY DOLLAR STORES, INC.'S MEMORANDUM SHOWING CAUSE REGARDING SANCTIONS

stated that he expected to receive Family Dollar's portion of the joint brief earlier. [Brooks Dec. ¶ 53, Exh. 42]. Brooks also identified the evidence that had already been filed with the original motion, which Mink could reference until he received the disk with Family Dollar's evidentiary appendix. [Brooks Dec. ¶ 53, Exh. 42]. In an effort to push past the squabbling, Brooks said:

> Now that the filing deadline is tomorrow, there is nothing left to do except get the papers finalized and filed on time. We don't need to fight about this, we just need to get it done. The court ordered us to file the motion in a joint format on August 8. We have provided you our position in our original brief, our reply brief, in many e-mails, and in our face to face meeting where I explained our position regarding the issues in detail. The papers I sent you yesterday by email, and which are being delivered to you on disk by courier today are consistent with all of the foregoing papers.

[Brooks Dec. ¶ 53, Exh. 42]. In addition, Brooks attempted to further accommodate Mink's schedule by offering to coordinate the joint filing on the afternoon of August 8, rather than August 7, so that Mink would have the maximum amount of time to complete his papers. [Brooks Dec. ¶ 53, Exh. 42]. Mink responded at 2:00 PM, confirming that he had received the disk with all of the papers but again attacking Brooks personally and accusing him of failing to cooperate. [Brooks Dec. ¶ 54, Exh. 43]. Mink also asserted that he could not begin work on his papers on August 7 because he would not have the evidentiary appendix in printed format until the end of the day. [Brooks Dec. ¶ 54, Exh. 43].

The following day, August 8, Brooks emailed Mink at 1:10 PM, asking whether to expect to receive anything to include in the filing and when to expect it. [Brooks Dec. ¶ 55, Exh. 44]. Mink responded at 1:31 PM, stating that he was still working on the joint appendix and had not even begun work on his legal brief. [Brooks Dec. ¶ 56, Exh. 45]. He did, however, provide references to the evidence that he intended to include in the evidentiary appendix. [Brooks Dec. ¶ 56, Exh. 45].

Brooks responded at 2:39 PM, stating that if Mink could not provide his portions of the papers that afternoon, Family Dollar would have no choice but to file the papers without his portions. [Brooks Dec. ¶ 57, Exh. 46]. Brooks also requested a table of the

facts which Disorderly Kids would claim to be undisputed with citations to evidence supporting those facts, so that Family Dollar could prepare responses to them. [Brooks Dec. ¶ 57, Exh. 46]. Brooks also provided a table showing how Disorderly Kids' evidence would be tabbed in the evidentiary appendix. [Brooks Dec. ¶ 57, Exh. 46]. Finally, Brooks offered to remain available by phone to go over logistics for finalizing the papers. [Brooks Dec. ¶ 57, Exh. 46].

At 3:00 PM, Mink responded by again accusing Family Dollar's counsel of preventing him from getting his papers done on time. [Brooks Dec. ¶ 58, Exh. 47].  He did not provide the requested table of facts that Disorderly Kids would assert as undisputed. [Brooks Dec. ¶ 58, Exh. 47]. At 3:23 PM, Brooks responded to this email, explained that he did not create the situation to put Mink in a bind, and again encouraged Mink to work cooperatively to get the papers finalized. [Brooks Dec. ¶ 59, Exh. 48]. In particular, Brooks said:

> At this point, I want to work with you to get the papers integrated and filed according to the court's order. It's clear to me that you and I are not going to agree on who cooperated in the past and who did not, so I suggest we put that issue aside and focus on cooperating now to get the papers ready for filing this afternoon.

[Brooks Dec. ¶ 59, Exh. 48]. Brooks also explained why the evidentiary appendix had been sent in electronic format rather than print. [Brooks Dec. ¶ 59, Exh. 48]. Finally, Brooks again requested that Mink provide a table of the facts Disorderly Kids contended to be undisputed so that Family Dollar could respond to them. [Brooks Dec. ¶ 59, Exh. 48].

At 3:25 PM, Mink stated by email that it was "impossible for [him] to put together anything coherent and complete to file this afternoon." [Brooks Dec. ¶ 60, Exh. 49]. Brooks responded at 4:02 PM, and advised Mink that Family Dollar would file the motion essentially in its current form. [Brooks Dec. ¶ 61, Exh. 50]. Brooks requested that if Mink intended to request leave to file late papers, that he provide a table of any additional facts Disorderly Kids would assert as undisputed so that Family Dollar could respond to them. [Brooks Dec. ¶ 61, Exh. 50].

DEFENDANT FAMILY DOLLAR STORES, INC.'S MEMORANDUM SHOWING CAUSE REGARDING SANCTIONS

With Mink's firm statement that he would not participate in the filing on August 8, Brooks directed his staff to proceed with finalizing and filing the motion. [Brooks Dec. ¶ 62]. Brooks also began preparing a declaration walking through Family Dollar's efforts to meet and confer with Disorderly Kids and to get the motion filed on time according to the court's order. [Brooks Dec. ¶ 62]. The motion (Dct 78, 79) was filed at 6:41 PM. [Brooks Dec. ¶ 62]. Brooks's declaration (Dct 80) was filed the following morning at 10:57 AM. [Brooks Dec. ¶ 62].

Unfortunately, the date Family Dollar selected for its hearing was removed from the Court's open calendar earlier in the day on August 8, after counsel for Family Dollar had checked the calendar and confirmed that the date was open. [Brooks Dec. ¶ 63]. Therefore, the motion was automatically stricken. [Order, Dct 81]. Family Dollar immediately re-filed the motion and declaration (Dct 82-83), setting the hearing for the next available date. [Brooks Dec. ¶ 63].

On August 12, the Court issued its order to show cause regarding sanctions. [Order, Dct 84]. In the order, the Court requires the parties to come to the court ready to meet and confer again, and advises that the court will not consider any future summary judgment motions unless transcripts of all meet and confers are included as part of the moving party's papers. [Order, Dct. 84]. For the Court's information, Family Dollar did include the transcript of the parties' July 18 meet and confer as part of its motion. The transcript is included as Exhibit D-48 (Pages 573-603) of the Evidentiary Appendix. (See Dct. 82-1 CM/ECF page 6; Dct 82-3 CM/ECF pages 229-59). [Brooks Dec. ¶ 64].

On August 15, Brooks emailed Mink regarding the Court's Order to Show Cause. [Brooks Dec. ¶ 65, Exh. 51]. Brooks proposed that in preparation for the hearing on the Order to Show Cause, Mink provide Disorderly Kids' portion of the joint papers by Monday, August 19, which would allow the parties to integrate the motion into a joint format and attend the hearing with a motion that would be ready to re-file. [Brooks Dec. ¶ 65, Exh. 51]. On August 19, at 3:12 PM, Mink sent an email which included a copy of Disorderly Kids' portion of the statement of uncontroverted facts. [Brooks Dec. ¶ 66,

Exh. 52]. However, Mink still had not completed his portion of the joint brief. [Brooks Dec. ¶ 66, Exh. 52]. He said he hoped to complete it by the end of the day Wednesday, August 21. [Brooks Dec. ¶ 66, Exh. 52]. He also identified a completely new witness— Jose Mendoza—who had never been disclosed previously. [Brooks Dec. ¶ 66, Exh. 52]. Brooks responded to Mink's email on August 19, at 4:23 PM. [Brooks Dec. ¶ 67, Exh. 53]. Brooks advised Mink that he would be out of the office and without access to email beginning August 21, and that he would be willing to work with him on Tuesday, August 20, to assemble any joint papers in preparation for the hearing. [Brooks Dec. ¶ 67, Exh. 53]. However, Brooks expressed surprise that Mink still had not completed his portion of the papers even after having Family Dollar's papers for 12 days. [Brooks Dec. ¶ 67, Exh. 53]. Brooks also stated that Family Dollar would object to any new previously undisclosed witnesses. [Brooks Dec. ¶ 67, Exh. 53].

## III.   LEGAL STANDARD

The Court's July 15 order to file the summary judgment motion on August 8, 2013, may be considered a modification of the scheduling order issued pursuant to Rule 16 of the Federal Rules of Civil Procedure. Rule 16(f)(1) provides that "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Furthermore, instead of or in addition to any other sanction, the court must order the disobedient party, its attorney, or both to pay the reasonable expenses incurred because of the disobedient conduct, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust. *Id.* R. 16(f)(2).

## IV.   DISCUSSION

### A.   Sanctions Against Family Dollar Are Not Warranted

First, neither Family Dollar nor its attorneys should be sanctioned under these circumstances. As set forth above, Family Dollar's attorney took the Court's July 15 order very seriously, and even attempted to streamline the process by offering to work out issues in advance of the face-to-face meeting, but Plaintiff's counsel refused to

DEFENDANT FAMILY DOLLAR STORES, INC.'S MEMORANDUM SHOWING CAUSE REGARDING SANCTIONS

cooperate. Brooks attended the meet and confer on July 18 prepared to go through all of the legal and evidentiary issues in detail. The Court's order did not require Family Dollar to complete its portion of the joint brief and provide it to Disorderly Kids on any particular date in advance of the filing date. Therefore, Family Dollar's attorneys reasonably assumed that both parties would prepare their arguments and evidence based on the original motion and the July 18 meeting.  There was no uncertainty regarding Family Dollar's position, which was previously provided in writing and discussed at the conference.  Therefore, Plaintiff's counsel simply needed to prepare his position and put it in writing, which is what Defendant's counsel had been requesting for months.

While the motion required some revision to comply with the court-ordered format, the arguments were not new. Neither was the evidence. As a result, Family Dollar's attorneys reasonably believed that the parties could integrate their respective portions of the joint papers on August 7, and have it ready for filing by August 8. Family Dollar's attorneys did everything they could to accommodate Mink so that he could finish his papers. However, instead of working together, Mink simply blasted Family Dollar's attorneys personally at every opportunity. Indeed, Mink did not even begin working on his portion of the papers until the morning of August 8, even though he had Family Dollar's papers for the entire day on August 7.

When the filing deadline arrived, Family Dollar was faced with a choice—either file the motion on time without Disorderly Kids' portion of the papers, or not file the motion on time. If Family Dollar did not file the motion on time, it would be in violation of the court's order to file the motion on August 8 and risked losing its right to move for summary judgment at all. But if it did file the motion on time, the court might find Family Dollar to be in violation of the order that the papers be fully integrated. Faced with this dilemma, Family Dollar's attorneys decided that filing the motion would be the lesser of the two evils. If Mink were to finish Disorderly Kids' portion of the papers, he could always seek leave from the Court to file late papers. But given the circumstances there was no telling when, if ever, Mink would finish his papers. Indeed,

1  at the time of this filing—two weeks after Mink received Family Dollar's revised

2  papers—Disorderly Kids still has not completed its portion of the papers.

3      In short, at all times Family Dollar and its attorneys worked in good faith to

4  comply with the court's orders. At every turn, they have been met with excuses, delay,

5  and personal attacks from Disorderly Kids' attorney, Lyle Mink. Indeed, if Mink had

6  simply worked with Family Dollar to meet and confer when the original motion was

7  filed, he might not have made misleading and frivolous arguments to the court, and the

8  need to re-file the motion could have been avoided altogether. Under these

9  circumstances, justice would not be served by sanctioning Family Dollar or its

10 attorneys. On the contrary, if any party should be sanctioned, it should be Disorderly

11 Kids and its attorney.

12 **B.    An Appropriate Sanction Should Be Imposed Against Disorderly Kids**

13 **And Its Attorney, Lyle Mink**

14     The Court should impose sanctions against Disorderly Kids and its attorney, Lyle

15 Mink. As set forth in detail above and in the evidence accompanying this memorandum,

16 Mink has refused to work cooperatively with Family Dollar's attorneys from day one.

17 When Family Dollar's attorneys attempted to get Disorderly Kids' substantive

18 responses to the issues prior to the original motion for summary judgment, Mink did not

19 provide them. Instead, after summarily brushing off Family Dollar's positions on some

20 of the issues, he said, "I see no need to respond to the remainder of your email."

21 [Brooks Dec. ¶ 26, Exh. 22].

22     If, prior to the motion, Mink had explained the theories and evidence he intended

23 to rely on in opposition, Family Dollar's attorneys could have cleared up his

24 misunderstanding regarding the evidence and he might have been able to avoid making

25 false and misleading statements in his opposition brief (i.e., that "Butterfly With Stripes

26 Screen" was created prior to the accused design, and that evidence established access by

27 Nicole Coppinger to Disorderly Kids works) that ultimately resulted in the current

28

situation. Unfortunately, he was too busy to get up to speed on the case and meet with Family Dollar's counsel prior to the motion.

If, following the court's order on the motion, Mink had come to the face-to-face meeting prepared (i.e., having read Family Dollar's reply brief, and being familiar with the case law and evidence), perhaps the parties could have resolved many of their differences. Instead, Mink came to the face-to-face meeting so concerned about his trial preparation that he could not even focus on the matters at hand.

If, following the face-to-face meeting, Mink had researched the law that was discussed in the meeting and begun working on refining his arguments and evidence, he would have been prepared to exchange papers on August 7, and integrate them fully in time to file on August 8. Instead, Mink focused on preparing an *ex parte* application to further delay this case, and otherwise apparently ignored it all together.

If, after receiving Family Dollar's portion of the joint papers on the evening of August 6 (which he acknowledged receiving the morning of August 7), Mink had immediately begun adapting his papers to the format required by the court, he could have completed the work and been ready to file by the evening of August 8. Instead, he waited until August 8—the filing deadline—to begin work and, as a result, did not have anything ready in time. He chose instead simply to disobey the court's order.

If, after having failed to obey the court's order to file on August 8, Mink had continued working on his papers and filed a request to file late papers, perhaps the Court would have not needed to order the parties to show cause regarding sanctions, or to meet again to confer on this motion for summary judgment. Instead, as of this filing, Mink has still not completed Disorderly Kids' portion of the papers (even though Family Dollar has requested that he do so in preparation for the new meet and confer).

If Mink had told Family Dollar's attorneys immediately after the Court's July 15 order that he did not intend to begin working on his papers until after receiving Family Dollar's papers, and that he needed them by a particular date, the parties could have discussed the matter and come to an agreement. Instead, Mink did nothing and surprised

Family Dollar's attorneys by saying that he had nothing prepared when they proposed to exchange papers.

In short, if Mink had simply cooperated with Family Dollar's attorneys, this motion could have been disposed of some time ago. Instead, he made frivolous and misleading arguments that confused both the court and Family Dollar, and then when confronted with these errors he refused to take responsibility and fix them. The record reflects a pattern of untempered hostility from Mink, coupled with a refusal to focus on the tasks at hand. Family Dollar's attorneys remain willing to work with Mink to resolve this case, but they cannot force him to pay attention to this case or to work with them in a professional manner.

Rule 16(f) permits the court to impose any of the sanctions set forth in Rule 37(b)(2)(A)(ii)-(vii). Those sanctions include the following:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party;
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Furthermore, instead of or in addition to any of these sanctions, the court must order the disobedient party, its attorney, or both "to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with [Rule 16], unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

Here, it would not be inappropriate to prohibit Disorderly Kids from opposing Family Dollar's motion for summary judgment and to grant judgment on the motion in Family Dollar's favor. Alternatively, the court could order Disorderly Kids to incorporate their portion of the joint papers into the already filed motion, and re-file the entire motion according to a firm schedule set by the court. Family Dollar would have

the opportunity to respond to arguments and evidence raised in Disorderly Kids' portion of the papers in the supplemental memorandum referenced in the Court's July 15 order. The Court would then be able to decide the motion on the merits. In addition, because there is no substantial justification for Disorderly Kids' failure to participate in the August 8 filing, Lyle Mink and Disorderly Kids must be ordered to pay the expenses incurred by Family Dollar resulting from the noncompliance. Family Dollar estimates the fees it has incurred as a result of Mink's failure to adequately meet and confer on this motion at approximately $17,375 ($11,200 for fees incurred by Samuel Brooks, and $6,175 for fees incurred by Scott Shaw). [Brooks Dec. ¶ 68; Shaw Dec. ¶ 2].

## V.    CONCLUSION

For the reasons set forth in this memorandum, Family Dollar requests that the Court not impose any sanctions against Family Dollar, but instead impose an appropriate sanction against Disorderly Kids.


Dated:  August 20, 2013                  CALL & JENSEN
                                         A Professional Corporation
                                         David R. Sugden
                                         Scott P. Shaw
                                         Samuel G. Brooks


                                         By:    /s/ Samuel G. Brooks
                                              Samuel G. Brooks

                                         Attorneys for Defendant Family Dollar Stores, Inc.

DEFENDANT FAMILY DOLLAR STORES, INC.'S MEMORANDUM SHOWING CAUSE REGARDING SANCTIONS