Mark L. Eisenhut, Bar No. 185039
meisenhut@calljensen.com
Scott P. Shaw, Bar No. 223592
sshaw@calljensen.com
Samuel G. Brooks, Bar No. 272107
sbrooks@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:  (949) 717-3000
Fax:  (949) 717-3100

Attorneys for Defendant Family Dollar Stores, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISORDERLY KIDS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>FAMILY DOLLAR STORES, INC., a Delaware corporation (erroneously sued as FAMILY DOLLAR, a North Carolina company), and DOES 1-10, inclusive,<br><br>Defendants. | Case No.  CV12-05073 FMO (JCGx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES BY DEFENDANT FAMILY DOLLAR STORES, INC.**<br><br>Date: March 10, 2016<br>Time: 10:00 AM<br>Place: Courtroom 22<br><br>Complaint Filed: June 11, 2012<br>Trial Date: January 12, 2016 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ..................................................................................1

III. DISCUSSION ..........................................................................................................5

    A. An Award of Attorneys' Fees in this Case Will Further Goals of the Copyright Act ................................................................................5

    B. The *Wall Data* Factors Favor an Award Of Attorneys' Fees ........................7

        1. Defendant Obtained Complete Success .................................................7

        2. Disorderly Kids Asserted Frivolous (or Near-Frivolous) Claims ........7

        3. Disorderly Kids' Improper Motivation Was Apparent ........................9

        4. Disorderly Kids Made Unreasonable Arguments ..............................10

        5. Awarding Fees Will Advance Considerations of Compensation and Deterrence. .........................................................11

    C. The Fees Requested by Family Dollar are Reasonable..............................12

IV. CONCLUSION......................................................................................................14

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Assessment Technologies of WI, LLC v. WIREdata, Inc.*,
  361 F.3d 434 (7th Cir. 2004) ................................................................. 1, 6

*Beach Beverage Mktg. United States v. S. Beach Bev. Corp.*,
  No. 97Civ. 4137(LMM), 2002 WL 31844911 (S.D.N.Y. Dec. 19, 2002) ................................................................................................. 10

*Budget Cinema, Inc. v. Watertower Associates*,
  81 F.3d 729 (7th Cir. 1996) ........................................................................ 8

*Diamond Star Bldg. Corp. v. Freed*,
  30 F.3d 503 (4th Cir. 1994) ..................................................................... 6, 8

*Fantasy, Inc. v. Fogerty*,
  94 F.3d 553 (9th Cir. 1996) ..................................................................... 6, 9

*FM Indus., Inc. v. Citicorp Credit Services, Inc.*,
  614 F.3d 335 (7th Cir. 2010) ....................................................................... 7

*FM Indus., Inc. v. Citicorp Credit Services, Inc.*,
  No. 07C1794, 2009 WL 346991. (N.D. Ill., Feb. 4, 2009) ......................... 6

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ........................................................................ 6, 7, 11

*Hensley v. Eckerhart*,
  461 U.S. 424 (1980) ................................................................................. 12

*Ingram v. Oroudjian*,
  647 F.3d 925 (9th Cir. 2011) .................................................................... 10

*Jackson v. Axton*,
  25 F.3d 884 (9th Cir. 1994) ........................................................................ 6

**TABLE OF AUTHORITIES (con't)**

Page

*Mattel, Inc. v. Walking Mountain Productions*,
   No. CV99–8543RSWL(RZX), 2004 WL 1454100 (C.D. Cal. June 21, 2004) ............................................................................................................... 9

*McGaughey v. Twentieth Century Fox Film Corp.*,
   12 F.3d 63 (5th Cir. 1994) ....................................................................................... 5

*Robinson v. Lopez*,
   No. CV 03–3732–LGB (PLAx), 2003 WL 23162906 (C.D.Cal. Nov.24, 2003) ........................................................................................................ 7

*Traditional Cat Ass'n v. Gilbreath*,
   340 F.3d 829 (9th Cir. 2003) ................................................................................. 12

*Tuff 'N' Rumble Management, Inc. v. Profile Records, Inc.*,
   No. 95 Civ. 0246 SHS, 1997 WL 470114 (S.D.N.Y. Aug. 15, 1997) ..................... 9

*Wall Data Inc. v. L.A. County Sheriff's Dep't*,
   447 F.3d 769 (9th Cir. 2006) .............................................................................. 6, 7

*Yahoo!, Inc. v. Net Games, Inc.*,
   329 F.Supp.2d 1179 (N.D. Cal., 2004) ................................................................. 12

**FEDERAL STATUTES**

17 U.S.C. § 505 ........................................................................................................ 1, 5

## I.     INTRODUCTION

Defendant Family Dollar Stores, Inc. ("FD") is entitled to recover its attorneys' fees as the prevailing party in this action. 17 U.S.C. § 505. Indeed, as a prevailing defendant, "the presumption in favor of awarding fees is very strong." *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 361 F.3d 464, 437 (7th Cir. 2004) (Emphasis added). FD was innocent of all claims leveled against it, and successfully defended itself against those claims. On the other hand, Plaintiff Disorderly Kids ("DK") pursued this claim in bad faith in an effort to punish FD for conduct wholly unrelated to copyright protection, namely moving its business to a different supplier. As explained fully below, the equities lie strongly in favor of awarding fees to FD.

## II.    FACTUAL BACKGROUND

This lawsuit was filed for one reason: revenge. DK's president admitted it during trial: "My motivation for bringing the lawsuit is I believe [Family Dollar buyer] Sarah Tate and [former Disorderly Kids salesman] John [Gilliam] conspired to make sure he [John Gilliam] got the business." [Trial Transcript ("TT") at 107:25-108:2 (Jan. 12, 2016 PM)]. The lawsuit was about a lost business relationship, and nothing more.

Prior to this lawsuit, DK and FD had a business relationship wherein DK supplied screen print t-shirts to FD. [TT at 45:11-45:14 (Jan. 12, 2016 PM)]. DK's salespersons, John Gilliam and Yolanda Flores, had a strong business relationship with FD's buyer, Sarah Tate. [TT at 105:9-105:15 (Jan. 13, 2016 AM)] DK terminated Mr. Gilliam, and he and Ms. Flores went to work for one of DK's competitors, Hybrid Apparel. [TT at 46:14-46:18; 107:2-107:11 (Jan. 12, 2016 PM)] When Gilliam and Flores showed Sarah Tate that Hybrid could do things for FD that DK could not, she shifted FD's business from DK and to Hybrid. [TT at 8:13-9:9 (Jan. 13, 2016 PM)].

DK was very upset over losing FD as a customer and DK wanted revenge. [TT 108:20-108:24 (Jan. 12, 2016 PM)]. So, DK went looking for t-shirts in FD stores in the same market trends, knowing they would inevitably find similar t-shirts in the same trend. [TT 52:14-55:17 (Jan. 12, 2016 PM)]. After finding several t-shirts in FD stores,

DK had its attorney, Matthew Seror, send a letter to FD asking FD to identify its supplier. [TT 56:24-57:4 (Jan. 12, 2016 PM); 117:25-118:1 (Jan. 12, 2016 PM)]. DK did not demand that FD actually stop selling the accused t-shirts, but instead only asked for information regarding the source. [TT 116:16-118:25 (Jan. 12, 2016 PM); Trial Exhibit 21]. When FD informed DK that it had purchased the accused designs from Ikeddi, surprisingly DK did not contact Ikeddi to further investigate the creation of the accused t-shirts. [TT 124:10-125:3 (Jan. 12, 2016 PM)].

Instead of reaching out to Ikeddi, DK applied for copyright registrations. [TT 120:7-122:22 (Jan. 12, 2016 PM)]. The reason DK applied for registration was so that it could file a lawsuit. [TT at 63:2-63:7 (Jan. 12, 2016 PM)]. In June 2012, DK's attorney, Matthew Seror, filed the initial complaint in this case, accusing FD of infringing five different copyrighted designs. [ECF No. 1 Complaint]. DK also accused FD of vicarious/contributory infringement and unfair competition under the Lanham Act. [Id.]. All claims related to designs on t-shirts. [Id.].

Within days after the Complaint was filed, counsel for FD and Ikeddi reached out to Mr. Seror. [Declaration of Scott P. Shaw ("Shaw Decl.") ¶ 2]. Mr. Seror explained that DK expected that the accused t-shirts were supplied by Hybrid Apparel. [Shaw Decl. ¶ 2]. Counsel for FD disclosed that the accused t-shirts had been supplied by Ikeddi, and that the designs were independently created by Ikeddi's designer. [Shaw Decl. ¶ 2]. FD's counsel explained that Hybrid Apparel was not involved, and asked that DK promptly dismiss the frivolous lawsuit. [Shaw Decl. ¶ 3].

On June 27, 2012, FD's counsel sent an e-mail proposing that DK at least amend the complaint to name Ikeddi as a defendant. [Shaw Decl. ¶ 4 Exh. 1]. On July 2, 2012, Mr. Seror responded and said that he anticipated filing an amended complaint. [Shaw Decl. ¶ 4 Exh. 1]. On July 17, 2012, Mr. Seror informed FD's counsel that the amended complaint would not name Ikeddi. [Shaw Decl. ¶ 5 Exh. 7]. The First Amended Complaint merely added a second cause of action for unfair competition. [ECF No. 8].

FD answered the First Amended Complaint on September 6, 2012. [ECF No. 10]. Then, on October 31, 2012, FD filed a Motion for Judgment on the Pleadings. [ECF No. 13]. The Court granted the motion in part, and dismissed Counts 4 and 5 of the First Amended Complaint (for infringement of "Side Butterflies Screen" and "People Person Screen"), leaving three claims for copyright infringement ("New York Screen," "Butterfly Lace Chains Screen," and "Butterfly With Stripes Screen") and claims for vicarious/contributory infringement and unfair competition. [ECF No. 25]. FD is the prevailing party on the dismissed claims.

During the discovery process, FD further disclosed that the accused t-shirt designs were independently created by Ikeddi's graphic designer, Nicole Coppinger (formerly known as Nicole Kirsch). [Shaw Decl. ¶ 6]. FD also produced documents confirming these facts. [Shaw Decl. ¶ 6]. The documents showed when Ms. Coppinger created the designs, and the stock art she used to create them. [Shaw Decl. ¶ 6]. Among other things, the documents proved that Ms. Coppinger's accused butterfly design was created <u>prior to</u> DK's "Butterfly With Stripes Screen," and therefore could not have been copied from that design. [Shaw Decl. ¶ 6]. Despite these undisputed facts, FD refused to dismiss the case or settle and pay any of FD's fees.

On February 26, 2013, FD's counsel sent a letter to DK's counsel discussing the merits of the case, pointing out that FD would be entitled to costs and attorney's fees, and offering a "walk away" settlement. [Declaration of Samuel G. Brooks ("Brooks Decl.") ¶ 2, Exh. 1]. On April 9, 2013, the Parties attended mediation with the Court-appointed volunteer mediator, Greg Derin. [Brooks Decl. ¶ 3]. The case did not settle. [Brooks Decl. ¶ 3]. In light of the evidence revealed through the discovery process FD's counsel also informed DK's counsel around that same time that FD would move for summary judgment. [Brooks Decl. ¶ 4]. After meeting and conferring, DK's attorneys refused to drop the claims. [Brooks Decl. ¶ 4].

When it became clear that FD would not submit to DK's demands and that it would have to oppose a motion for summary judgment, DK replaced its hourly

attorneys at Buchalter Nemer with a contingency attorney, Lyle Mink in May, 2013. [Brooks Decl. ¶ 5]. FD filed its motion for summary judgment later that month. [ECF Nos. 48, 50].

On July 15, 2013, the Court denied FD's first motion for summary judgment without prejudice on the grounds that "the parties are not on the same page with respect to the issues and positions presented." [ECF No. 70]. The Court directed the parties to meet and confer again regarding the issues and re-file the motion by August 8, 2013. [ECF No. 70]. FD's counsel attempted to meet and confer with DK's new contingency counsel, but Mr. Mink repeatedly responded to emails saying that he didn't have time to work on the case. [Brooks Decl. ¶ 6, Exh. 2]. DK's counsel's unavailability resulted in more work for FD's counsel, and FD ultimately had to re-file its motion on August 8 without DK's portion of the joint brief. [Brooks Decl. ¶ 7]. The Court struck the filing and ordered the parties to try again. [Brooks Decl. ¶ 7]. Ultimately, DK's counsel still refused to drop any of the claims—including "Butterfly With Stripes Screen," even though the undisputed evidence established that it was created after the Ikeddi butterfly design. [Brooks Decl. ¶ 6].

On July 24, 2013, FD's counsel served (but did not file) a motion for Rule 11 sanctions on the grounds that claims for copyright infringement were unwarranted by law or fact, and that the claim for unfair competition was not warranted by law. [Brooks Decl. ¶ 7]. Because DK did not drop those frivolous claims, FD filed the motion for sanctions on August 28, 2013. [ECF No. 93]. Also, after having to jump through hoops to accommodate DK's counsel, FD's counsel was able to coordinate the filing of a joint brief and evidentiary appendix in connection with FD's motion for summary judgment on August 28, 2013. [ECF No. 88].

On September 30, 2013, the Court took FD's motion for summary judgment and motion for sanctions under submission without oral argument. [ECF No. 107]. On March 31, 2014, the Court issued its order granting the motion for summary judgment

with respect to "Butterfly With Stripes Screen" and unfair competition. [ECF No. 111]. The Court denied FD's motion for sanctions. [ECF No. 111].

On April 15, 2014, FD's counsel sent an email to DK's counsel offering to settle the case if DK would agree to make payments toward FD's attorney fees. [Shaw Decl. ¶ 7, Exh. 2]. Later that day, DK responded with a demand that FD pay DK $150,000. [Shaw Decl. ¶ 7, Exh. 2]. On April 17, 2014, the Court directed the Parties to attend a mandatory settlement conference with Magistrate Judge Stephen J. Hillman. [ECF No. 112]. The Parties attended the Settlement Conference on May 21, 2014, but did not settle. [ECF No. 113].

On September 17, 2015, the Court issued an order setting the case for trial on January 12, 2016. [ECF No. 114]. After two pretrial conferences, the jury trial began as scheduled on January 12, 2016. After the close of evidence, DK's attorney requested that the jury award FD's total sales in the amount of $372,691, in spite of the evidence of FD's deductible expenses. [TT 53:16-54:8 (Jan. 14, 2016 PM)]. The jury reached a verdict in FD's favor at 11:55 AM on January 15, 2016. [ECF No. 224].

## III. DISCUSSION

### A. An Award of Attorneys' Fees in this Case Will Further Goals of the Copyright Act

In any civil action for copyright infringement, the Court in its discretion may "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Although the award of attorneys' fees is discretionary, an award of fees to a prevailing defendant is the rule rather than the exception. *See, e.g.*, *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 63, 65 (5th Cir. 1994) ("Although attorney's fees are awarded in the trial court's discretion [in copyright cases], they are the rule rather than the exception and <u>should be awarded routinely</u>.") (emphasis added, internal quotation marks omitted). This is particularly true where the defendant presents a valid defense: "When the prevailing party is the defendant, who by definition receives not a small award but no award, <u>the presumption in favor of awarding fees is very</u>

strong." *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) (emphasis added); *see also Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994) (reversing denial of award where defendant "was entitled to confront Diamond Star's allegations with a valid defense and should not have been penalized for proceeding to trial and having those allegations declared false.").

The Ninth Circuit, consistent with the Supreme Court, has further recognized that "a finding of bad faith, frivolous or vexatious conduct is no longer required; and awarding attorney's fees to a prevailing defendant is within the sound discretion of the district court informed by the policies of the Copyright Act." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 560 (9th Cir. 1996).

In deciding whether to award fees to a prevailing party, the Court must consider whether an award will "further the goal of copyright law." *Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006). The purpose of the Copyright Act is to further the arts and promote creativity for the public benefit. *See Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994). The U.S. Supreme Court has held that "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994); *see also Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 559 (9th Cir. 1996). The Copyright Act encourages defendants "who seek to advance a variety of meritorious copyright defenses . . . to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty*, 510 U.S. at 527. As one court recognized, "Section 505 encourages a defendant to pursue meritorious copyright defenses without fear of burdensome attorneys' fees and costs." *FM Indus., Inc. v. Citicorp Credit Services, Inc.*, No. 07C1794, 2009 WL 346991, at *3. (N.D. Ill., Feb. 4, 2009). The Seventh Circuit affirmed this principle, noting that "[a] defendant who prevails in copyright litigation vindicates the public's interest in the use of intellectual property, but without an award of fees the prevailing defendant has only losses to show for the

litigation." *FM Indus., Inc. v. Citicorp Credit Services, Inc.*, 614 F.3d 335, 339-40 (7th Cir. 2010).

In the Ninth Circuit, the Court's discretion may be informed by a variety of factors:

> A district court may consider (but is not limited to) five factors in making an attorneys' fees determination pursuant to § 505. These factors are (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) reasonableness of losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence.

*Wall Data, Inc.*, 447 F.3d at 787. Here, each of these factors weighs in favor of awarding fees. And even if some factors would not support an award, "[c]ourts have awarded costs for copyright claims based on a single factor ...." *Robinson v. Lopez,* No. CV 03–3732–LGB (PLAx), 2003 WL 23162906, at *2 (C.D.Cal. Nov.24, 2003).

### B.  The *Wall Data* Factors Favor an Award Of Attorneys' Fees

#### 1.  Defendant Obtained Complete Success

The first factor under *Wall Data* is the degree of success obtained. FD obtained judgment in its favor on every claim asserted. First, FD obtained judgment on the pleadings with respect to claims for infringement of "Side Butterflies Screen" and "People Person Screen." Then, FD obtained summary judgment with respect to "Butterfly With Stripes Screen." Plaintiff voluntarily dropped its claims for vicarious and contributory infringement prior to trial. [Brooks Dec. ¶ 9]. And FD obtained a jury verdict in its favor with respect to "New York Screen" and "Butterfly Lace Chains Screen." Because FD's defense was completely meritorious, this factor heavily favors an award of attorney's fees.

#### 2.  Disorderly Kids Asserted Frivolous (or Near-Frivolous) Claims

Here, DK asserted and maintained copyright infringement claims against FD with absolutely no factual support. While DK may have had a suspicion that FD's vendor,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES BY DEFENDANT FAMILY DOLLAR STORES, INC.

Ikeddi, copied its designs, it never presented *any* evidence that Ikeddi's designer had access to its designs. On the contrary, the evidence disclosed in discovery and presented at trial established that she independently created her designs using stock images from Shutterstock. [Shaw Decl. ¶ 6]. In spite of the evidence, case law, and court rulings to the contrary, DK's counsel consistently argued that it was enough merely to show that FD's buyer, Sarah Tate, had access to its images—even though the evidence clearly showed that she was not the author. DK forced FD to spend significant time and money to correct these incorrect legal arguments. Claims relating to three out of Plaintiff's five allegedly copyrighted designs were disposed of prior to trial. The only two surviving claims barely made it to the jury. In ruling on FD's Rule 50 Motion, the Court noted that the question whether to direct a verdict for FD was "very close," and only denied the motion "out of an abundance of caution." [See TT 4:13-7:2 (Jan. 14, 2012 AM)]. Even the author who actually designed DK's "Butterfly Lace Chains Screen" testified that her design and the accused butterfly design "are totally different." [TT 103:24-104:10 (Jan. 13, 2012 PM)]. While the judge permitted the case to go to the jury, the jury was able to reject Plaintiff's claims after only a short period of deliberation.

"[W]hen a party has pursued a patently frivolous position, the failure of the district court to award attorney's fees and costs to the prevailing party will, except under the most unusual circumstances, constitute an abuse of discretion." *Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.,* 30 F.3d 503, 506 (4th Cir. 1994); *see also Budget Cinema, Inc. v. Watertower Associates,* 81 F.3d 729, 733 (7th Cir. 1996) (holding that district court abused its discretion by failing to award attorneys' fees based on the objective unreasonableness of plaintiff's complaint). Here, there can be no dispute that DK's claims were baseless. At least some of them were patently frivolous, including the claim that FD copied a design that did not even exist at the time the accused design was created. And even if not all of Plaintiff's claims were frivolous, they only just cleared the bar. This factor weighs in favor of awarding fees.

### 3. Disorderly Kids' Improper Motivation Was Apparent

While bad faith is not required to award fees, *see Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 560 (9th Cir. 1996), evidence of improper motivation weighs heavily in favor of an award. *See e.g., Mattel, Inc. v. Walking Mountain Productions,* No. CV99–8543RSWL(RZX), 2004 WL 1454100, at *2 (C.D. Cal. June 21, 2004) (finding the plaintiff's conduct was not motivated by protection of a valid interest). Here, DK's President admitted that he was not motivated by a desire to recover for damage suffered, but rather to get back at FD for pulling his business. Jason Schutzer testified: "My motivation for bringing the lawsuit is I believe [Family Dollar buyer] Sarah Tate and [former Disorderly Kids salesman] John [Gilliam] conspired to make sure he [John Gilliam] got the business." [Trial Transcript ("TT") at 107:25-108:2 (Jan. 12, 2016 PM)].

Circumstantial evidence confirms that DK was motivated by a vindictive desire to harass FD. For example, the fact that FD did not assert claims against FD's supplier and the creator of the accused designs (Ikeddi) is telling. Had it done so, Ikeddi's insurance carrier may have provided a defense to fund the litigation. By not adding Ikeddi as a defendant, DK ensured that Ikeddi would have to pay for the defense out of its own pocket, thereby increasing its leverage over FD.

Also, unlike most companies seeking to protect their intellectual property rights, DK did not seek to obtain an injunction or offer any theory of actual damages. Clearly, DK did not care if FD continued to sell the accused t-shirts. DK's pre-filing "demand letter" did not even ask FD to stop selling. DK suffered no actual harm as a result of FD's sales, but nevertheless pursued this case to inconvenience and harass FD.

Improper motivation may also be evidenced by a plaintiff's failure to properly research the law or facts involved in their claims, and causing the other side to incur legal expenses which could have been avoided. *See Tuff 'N' Rumble Management, Inc. v. Profile Records, Inc.*, No. 95 Civ. 0246 SHS, 1997 WL 470114, at *1 (S.D.N.Y. Aug. 15, 1997). Much of the cost in this case could have been avoided had DK and its

IKE01-04:1647741_2:2-2-16                                - 9 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES BY DEFENDANT FAMILY DOLLAR STORES, INC.

counsel simply acknowledged the evidence. For example, FD had to file multiple motions to dispose of claims relating to the "Butterfly With Stripes Screen," even though DK admitted that it was created after the accused design. During the pretrial stage, DK's attorney argued repeatedly that the jury should not even be instructed regarding the complete test for substantial similarity, and persisted in arguing that DK did not have to prove that the author of the accused designs had access

At a minimum, DK's pursuit of this lengthy and expensive copyright infringement claim when a simple comparison of the designs revealed no infringement was objectively unreasonable. *Beach Beverage Mktg. United States v. S. Beach Bev. Corp.*, No. 97Civ. 4137(LMM), 2002 WL 31844911, at *1 (S.D.N.Y. Dec. 19, 2002) ("[P]laintiffs' copyright claim was objectively unreasonable and, once challenged by defendants' summary judgment motion, was necessarily dismissed on the basis of little more than a simple comparison of the alleged infringed and infringing products.").

In short, Plaintiff filed this case based on improper motivation, maintained it in bad faith, needlessly increased the costs, and never once offered a reasonable settlement. DK's entire case was based on nothing more than suspicion and innuendo. On the other hand, FD systematically dismantled DK's case by presenting concrete evidence and legal argument both in motions and at trial. FD advised opposing counsel early and often of the weaknesses in DK's case, and attempted to settle the case in good faith. FD repeatedly rebuffed DK's good faith efforts to resolve the case.[1]

### 4. Disorderly Kids Made Unreasonable Arguments

DK made unreasonable arguments at various points in the litigation. For example, in opposition to FD's motion for summary judgment, DK argued that it could pursue a claim for infringement of "Butterfly With Stripes Screen" because FD had access to

---

[1] To the extent DK objects to this Court's consideration of settlement communications, FD would merely point out that more than one court has recognized that settlement communications are relevant in this context. *See Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) (agreeing with Third Circuit that settlement communications are relevant to questions regarding fee awards).

other designs, "some with butterflys [sic], some with stripes, some with lace, some with other elements." [*See* ECF No. 88, Joint Brief at 15:21-16:5]. DK argued without any legal support that "Plaintiff may use the butterfly with stripes design to sue for the infringement of those components as long as the components are its original designs, and they are." [*Id.*]. The Court correctly rejected this argument outright. [*See* ECF No. 122, Order at 9-10 ("By simple logic, it is impossible to copy something that does not exist."). At trial, DK's counsel argued that the jury should award all of FD's revenue, disregarding the evidence that FD incurred deductible expenses to purchase the items. [TT 53:16-54:8 (Jan. 14, 2016 PM)]. DK's counsel also attempted to misconstrue a witness's testimony. Mr. Mink asked Nicole Coppinger on cross-examination if FD had "ever" asked her to change the color for a design from yellow to red. [TT 63:24-64:1 (Jan. 13, 2016 AM)]. On redirect, Ms. Coppinger clarified that the New York design at issue in the case had always been red. [TT 82:4-83:9]. This testimony was not inconsistent, yet in his argument Mr. Mink urged the jury to use this testimony to discredit Ms. Coppinger. [TT 40:9-40:23]. These are only a few of DK's unreasonable legal and factual arguments. This factor weighs in favor of awarding fees.

### 5. Awarding Fees Will Advance Considerations of Compensation and Deterrence.

One of the purposes of permitting prevailing plaintiffs to recover attorney's fees is to deter would-be infringers from using the expense of litigation as a shield against copyright owners who might not otherwise be able to afford to protect their rights. By the same token, awarding fees to a prevailing defendant properly deters copyright owners from burdening the courts with frivolous, weak, or *de minimis* claims. It also encourages defendants with meritorious defenses to pursue those defenses. *Fogerty*, 510 U.S. at 527 ("a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.").

Here, an award of fees to FD would advance these considerations. As set forth above, DK's claims were weak to the point of frivolousness. The evidence revealed the weakness of Plaintiff's claims at an early stage. But instead of dismissing the claims and cutting its losses, DK chose to hire a contingency lawyer and roll the dice at trial. This is exactly the type of decision the Copyright Act is designed to deter.

On the other hand, FD could not force DK to drop its weak claims. And Plaintiff consistently maintained its position that it would not settle unless FD paid a six-figure sum. [Brooks Decl. ¶ 8]. In light of its meritorious defenses, FD had no obligation to accede to Plaintiff's settlement demands. In short, awarding fees in this case will confirm the well-settled principle that defendants who are innocent of copyright infringement should be encouraged to mount their defenses when the evidence is in their favor.

It is difficult to imagine a copyright infringement case where the values of compensation and deterrence would weigh more heavily in favor of an attorneys' fee award to a defendant. DK put forward almost no evidence to support its claims, and the jury took less than three hours to reach a unanimous verdict. FD had no choice but to incur hundreds of thousands of dollars in attorney's fees in order to obtain this result. It appears that DK's goal all along was to impose costs on FD and its competitor, Ikeddi—not to protect its valid interests. Under these circumstances, it is unfair to force FD to bear the attorneys' fees and costs it necessarily incurred to defend this action.

### C.   The Fees Requested by Family Dollar are Reasonable.

Once a court determines that fees are warranted under the Copyright Act, it must determine the reasonable value of the work performed. *Traditional Cat Ass'n v. Gilbreath,* 340 F.3d 829, 833 (9th Cir. 2003). A reasonable attorney fee is equal to "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1980). This "lodestar" figure is presumptively reasonable, and adjustments should be made only in rare cases. *Yahoo!, Inc. v. Net Games, Inc.,* 329 F.Supp.2d 1179, 1182 (N.D. Cal., 2004).

FD requests that the Court award fees at the following reasonable rates:

| Timekeeper | Title | Class Year | Rate |
|---|---|---|---|
| Samuel G. Brooks | Associate | 2010 | $375 |
| Mark L. Eisenhut | Senior Shareholder | 1996 | $575 |
| Aaron L. Renfro | Associate | 2007 | $400 |
| Scott P. Shaw | Shareholder | 2002 | $500 |
| Peter Siachos | Contract Attorney | N/A | $450 |
| David R. Sugden | Shareholder | 2001 | $500 |
| Various | Paralegals | Mid-Level to Super Senior | $200 |

These rates represent FD's attorneys' standard rates, which are competitive with other law firms of similar size and ability in Southern California. (Shaw Decl., ¶¶ 10-11, Exhs. 3-4). There can be no dispute that the rates requested are reasonable.

Furthermore, the number of hours expended on the litigation was reasonable. As shown by FD's counsel's time records, FD's attorneys did not pad their invoices with excessive, redundant, or unnecessary hours. [See Shaw Decl. ¶ 12, Exhs. 5-6]. All told, through January 2016 FD incurred only 1,408.5 hours in attorney and paralegal time to obtain partial judgment on the pleadings, partial summary judgment, and a complete defense verdict. [Shaw Decl. ¶ 12, Exhs. 5-6]. The representation of FD was conducted efficiently and at reasonable cost, especially given the quality of work, the defenses presented and the end result. Accordingly, FD requests an award of at least $566,405.

/ / /

/ / /

/ / /

IKE01-04:1647741_2:2-2-16                                     - 13 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES BY DEFENDANT FAMILY DOLLAR STORES, INC.

## IV. **CONCLUSION.**

For the reasons set forth above, Defendant Family Dollar Stores, Inc. respectfully requests that the Court award attorney's fees as part of the costs in the amount of at least $566,405.

Dated: February 2, 2016

CALL & JENSEN
A Professional Corporation
Mark L. Eisenhut
Scott P. Shaw
Samuel G. Brooks


By: */s/Scott P. Shaw*
    Scott P. Shaw

Attorneys for Defendant Family Dollar Stores, Inc.

IKE01-04:1647741_2:2-2-16

- 14 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES BY DEFENDANT FAMILY DOLLAR STORES, INC.